CLARISSA E. BENJAMIN, ADMINISTRATRIX OF THE ESTATE OF THEODORE BENJAMIN, DECEASED, PLAIN-TIFF-RESPONDENT, v. JOHN A. BLAKE, DEFENDANT-APPELLANT.

Argued May 3, 1938—Decided August 31, 1938.

Before BROGAN, CHIEF JUSTICE, and Justices BODINE and HEHER.

For the appellant, *William Charlton.*

For the respondent, *Morris Bloom.*

The opinion of the court was delivered by

HEHER, J. Plaintiff sued upon a promissory note made by defendant to the order of her intestate under date of October 28th, 1932. The answer, admitting the execution of the instrument, pleaded (a) payment, and (b) illegality, in that "the purpose of the note" was the creation of a fund, through its discount, for the purchase by both parties of "stakes in a daily lottery known as 'The numbers,'" contrary to the provisions of the Gaming act. *Comp. Stat.* 1910, *pp.* 2623 *et seq.; Rev. Stat.* 1937, 2:57-1 *et seq.* These issues were submitted to a jury, and there was a verdict for plaintiff. Defendant appeals from the consequent judgment.

*First:* Error is assigned upon the denial of defendant's motion for a directed verdict at the close of the case. The point is not well made.

There was no evidence tending to establish the plea of payment. The original note (the note in suit was the last renewal) was in the sum of $2,000. Defendant was permitted to testify that this sum, less interest, was given to him by the deceased at the time of the making and delivery of the note, and that he repaid $930 on the principal, but questions designed to elicit evidence of a "talk" he had with the deceased "about the balance of the note" were overruled, and properly so, as within the prohibition of section 4 of the Evidence act. *Comp. Stat.* 1910, *p.* 2218, § 4; *Rev. Stat.* 1937, 2:97-2. The case was therefore barren of proof of payment of the balance of the debt, which defendant, by the renewal note, continued to acknowledge as his own.

In support of the defense of illegality of the contract, two witnesses called by defendant testified that the deceased, while employed as a chef in the Holmhurst Hotel, in the city of Atlantic City, admitted to them that he was a "partner" of defendant in "the number business," and that on "several occasions" they carried envelopes containing "number slips" from the deceased to defendant. One fixed the year 1928 as the time of the alleged admission of an unlawful combination; the other said it was made in 1933, subsequent to the mak-

ing of the note in suit. The time of the original transaction was not proved.

Plainly, this evidence, if accepted as verity, did not establish the claimed illegality of the contract. Even so, its quality and weight were for the determination of the triers of the facts. The element of the conclusiveness was lacking. The making of the admission by the deceased was not conceded; in fact, it was vigorously denied, although in the circumstances not the subject of direct refutation. That being so, the evidence presented an issue of fact. *Schmidt* v. *Marconi Wireless Telegraph Co.*, 86 *N. J. L.* 183; *Clark* v. *Public Service Electric Co.*, 86 *Id.* 144; *McCormack* v. *Williams*, 88 *Id.* 170.

Every negotiable instrument is deemed *prima facie* to have been issued for a valuable consideration (*Comp. Stat.* 1910, *p.* 3738, § 24; *Rev. Stat.* 1937, 7:2-24), and to be entirely free of the taint of illegality. Absence or failure of consideration is, by virtue of section 28 of the cited statute, matter of affirmative defense as against any person not a holder in due course; and this would seem to cast upon the defendant the burden of establishing such defense by a preponderance of the evidence. While the case of *Gaddis* v. *Gaddis,* 10 *N. J. Mis. R.* 521, seems to be to the contrary, section 28 of the Negotiable Instruments Act (*Comp. Stat.* 1910, *p.* 3738, § 28; *Rev. Stat.* 1937, 7:2-28) was not there considered. And the identity of the consideration with illegality, such, for example, as its intended use for gaming or wagering, or otherwise to effect an illegal object, likewise falls into the category of an affirmative defense.

Where the instrument on its face is devoid of the taint of illegality, the presumption of legality obtains, if, indeed, it does not in that situation bear evidence of legality. Compare *McCormack* v. *Williams, supra.* In actions on negotiable instruments, the general rule of evidence obtains that the ultimate burden of proof, as distinguished from the mere duty of going forward with the evidence to rebut—by countervailing proof—a presumption or *prima facie* case in favor of the adversary party, rests upon the party that, in the fair

apportionment of the burden of proof, has the affirmative of the issue. And so the defendant has the burden of proof of a defense essentially affirmative in character. But regardless of where lies the burden of proof respecting these particular issues, the evidence in the case at hand plainly presented issues for resolution by the determinators of the facts. *McCormack* v. *Williams, supra; Schmidt* v. *Marconi Wireless Telegraph Co., supra.*

And there is nothing of substance in the contention that plaintiff's reply, because it merely joined issue on the answer in accordance with the common law formula, is to be deemed an admission of the material allegations of the answer, under rule 34 of this court. It was interposed as a denial, and was so regarded by the parties throughout the proceedings. Its sufficiency as a pleading cannot be raised for the first time on appeal.

*Second:* The trial judge properly overruled the question propounded to defendant's witnesses as to whether the deceased was "diligent in collecting money that might be due him."

This was not a relevant inquiry. The fact that, so far as the witnesses had observed, the deceased had been "diligent" in collecting moneys due him would clearly not serve to justify a finding that, although the statute of limitations had not barred the action, the delay was such as to raise a presumption or sustain an inference of payment. Such a rule would do violence to established principles. Under that doctrine, the right of recovery would depend upon the creditor's diligence in other cases, and so would involve an inquiry into collateral matters that ordinarily would be interminable, and, at all events, would provide an illusory standard of conduct tending to the arbitrary denial of contractual rights, and thus to frustrate essential justice.

Judgment affirmed, with costs.